L. George BATTY, Plaintiff and Respondent,

v.

Donald N. MITCHELL, Jr., Defendant and Appellant.

No. 15194.

Supreme Court of Utah.

Feb. 14, 1978.

---

P. Keith Nelson of Nelson, Harding, Richards, Leonard & Taft, Salt Lake City, for defendant and appellant.

Ray H. Ivie, Provo, for plaintiff and respondent.

MAUGHAN, Justice:

This is an appeal from the judgment of the district court wherein a jury found defendant comparatively negligent in causing a collision between him and the plaintiff and awarding money damages to plaintiff. We affirm. Costs to plaintiff. Statutory references are to U.C.A.1953, unless otherwise noted. Defendant contends:

(1) The district court failed to properly instruct the jury as to plaintiff's duty of care, (2) plaintiff was at least as negligent as defendant as a matter of law, (3) the jury's award of damages cannot be sustained by the evidence and, (4) the district court erred in separating jury deliberations by requesting special verdicts for liability and damages.

On the afternoon of May 23, 1975, plaintiff, hereinafter Batty, was southbound in his pickup truck along the Old Geneva Road, a two-lane highway posted at 50 m. p. h., near Orem. As he attempted to negotiate a left turn into Myron's Auto Wrecking salvage yard, a business located on the east side of the highway between intersections, Batty's truck was struck by a passenger car travelling south, in the east, or northbound lane, driven by defendant, hereinafter Mitchell.

Batty's truck had been followed closely by a semi-trailer truck, 61 feet in length, driven by one Morrey. Batty testified that as he approached the yard, he checked for northbound, on-coming traffic, and glanced in his rear-view mirror, noting that the semi was directly behind him. He then proceeded to turn. It is not clear whether Batty activated his turning indicator. Meanwhile, Mitchell, also southbound, was approaching from the rear. Mitchell testified that as he drew near the semi, within 75 to 100 feet, he slowed to about 45 m. p. h and then, not perceiving any indication on the part of the semi to either accelerate or turn, checked for northbound traffic and proceeded to pass. He had accelerated to a speed of about 60 to 65 m. p. h. as he approached the cab of the semi-trailer, at this point, Mitchell first observed the Batty vehicle, now in the midst of its turn. The vehicles collided almost instantly thereafter, with Mitchell having little or no time to apply his brakes. Batty testified he never saw the Mitchell car. Struck broadside, the cab of Batty's pickup was separated from its chassis and came to rest over 100 feet from the point of impact.

Defendant first contends the district court erred in refusing to instruct the jury that plaintiff's duty of proper lookout included a duty "to anticipate lawfully passing traffic from the rear" and "to check in his rear-view mirror to ascertain whether or not oncoming traffic from the rear constituted an immediate hazard." Instead the court told the jury plaintiff had a duty, among other things, "to use reasonable care to keep a lookout for other vehicles or other conditions reasonably to be anticipated" and "not to turn a vehicle unless and until such movement can be made with reasonable safety." The latter instruction closely resembles the standard set out in 41–6–69(a), which provides in part:

No person shall . . . turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. . . .

While both logic and authority support the notion that making a turn with "reasonable safety" includes the safety of drivers and occupants of vehicles approaching from the rear as well as the safety of those in oncoming vehicles, it cannot be said, as a matter of law, that the driver of a lead car, before attempting a turn, has the duty in every instance to anticipate each contingency with respect to the vehicles behind him. The close proximity of a long semi-trailer directly behind the plaintiff's truck may well have prevented him from perceiving defendant's advancing car. From the defendant's proposed instructions, however, the jury could have concluded the plaintiff had a duty, as a matter of law, to anticipate defendant's car regardless of the circumstances. Plaintiff had a duty to act as a reasonably prudent person under the circumstances, and as this was adequately conveyed to the jury, the trial court did not err in refusing to give defendant's instruction.

█ It follows, then, that the question of negligence from a failure to observe traffic approaching from the rear is a question for the jury unless reasonable minds are unable to differ, when it becomes a matter of law. Upon review of the record, we are not prepared to say that plaintiff's failure to position his truck in a manner enabling him to check for all vehicles that might be attempting to pass was negligent as a matter of law; nor can we say that the defendant was no more than equally blameworthy in his failure to completely assess the situation ahead before attempting to pass. The evidence indicates that these were questions of fact and the trial court properly left them for the jury's determination.

The defendant next contends the jury's award of damages to plaintiff for injuries sustained in the collision were excessive, in view of the testimony of physicians who had examined him. Also, it is contended the court erred in denying a motion for a new trial under, Rule 59(a)(5), U.R.C.P.

█ That rule provides a new trial may be granted, because of the award of excessive damages "appearing to have been given under the influence of passion or prejudice." Generally, the amount of the verdict is a matter exclusively for the jury and unless such an award clearly indicates the jury's disregard of competent evidence or the influence of passion or prejudice, the trial court may not interfere with the jury's determination.[1]

█ On review, this court's function is limited to a determination of whether the trial court's denial of the motion was an abuse of discretion. *Paul v. Kirkendall, supra.* In the instant case, defendant fails to direct our attention to any evidence of passion or prejudice on the part of the jury. Furthermore, it cannot be said the jury's award bears no reasonable relationship to the plaintiff's injury in light of the evidence. Batty was awarded $10,000 in general damages. All of the physicians testifying at the trial agreed plaintiff was injured in the collision. Batty's chiropractor estimated Batty had sustained a 19.4 percent permanent impairment of the spine as a result of the accident. Another physician, Mitchell's, testified Batty had an 8 percent total-body permanent partial impairment that may have been attributable to the collision. He also informed the jury that Batty's present pain and undisputed inability to engage in recreational activities involving running or jumping were not used in calculating the percentage of disability. Although not all the evidence was favorable to Batty, it appears that sufficient competent evidence existed to enable the jury to arrive at its verdict for damages, and we hold that the trial court did not abuse its discretion in denying Mitchell's motion for a new trial.

█ Finally, Mitchell asserts the court incorrectly separated the jury's deliberations into special verdicts for liability and damages. He does not take issue with the

---

1. *Paul v. Kirkendall,* 1 Utah 2d 1, 261 P.2d 670 (1953); *Weber Water Basin Conservancy Dist. v. Skeen,* 8 Utah 2d 79, 328 P.2d 730 (1958).

use of special verdicts, specifically sanctioned by statute.[2] Rather he objects to the separate deliberations by the jury in arriving at the separate verdicts.

The authorities cited in support of this contention are persuasive, but only in fact situations where they apply. For example, *State ex rel. Perry v. Sawyer.*[3] There the court addressed itself to the bifurcation problem in its true sense, i. e., a situation where a trial court had ordered separate trials on the issues of liability and damages. We have no such bifurcation here. In this matter all the evidence was adduced at one trial, but the jury retired twice. Once to apportion negligence, and once to determine damages.

This court on July 28, 1976, approved jury instructions for use in comparative negligence cases. A footnote to Form No. 3 allows the procedure followed by the trial court, it is:

Consideration may be given by the trial court to submitting the damage question following an initial submission to and answer by the jury to the various questions that determine liability. A bifurcated submission will reduce the possibility that the jury, in answering the damage interrogatory, will assume that the plaintiff is to receive something, even though the other interrogatories negate liability completely.

The word "bifurcated" is here used in its generic sense and not as it is understood when one speaks of a bifurcated trial.

The procedure followed is not reversible error; unless it is shown to be prejudicial, or an abuse of the court's discretion in ordering it. Indeed, in proper cases it is to be encouraged. The prejudice claimed is plaintiff's counsel is enabled to address the jury six times, while defense counsel is limited to four. Such, we do not see as prejudice per se. Nothing is shown to indicate an abuse of the court's discretion.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

2. 78–27–38 (1977).

3. 262 Or. 610, 500 P.2d 1052 (1972).