**Harry BENNION and Barbara Bennion, Plaintiffs and Respondents,**

**v.**

**LeGRAND JOHNSON CONSTRUCTION CO., Johnson Ready Mix Concrete Company a Utah corporation, Defendants and Appellants.**

**No. 18933.**

Supreme Court of Utah.

June 5, 1985.

---

1. U.C.A., 1953, § 41–6–44.10.

2. Utah, 619 P.2d 315 (1980).

3. *Id.* at 317.

4. *Id.* at 317.

Robert H. Henderson, Raymond M. Berry, Lyle W. Hillyard, Salt Lake City, for defendants and appellant.

N. George Daines, Logan, for plaintiffs and respondents.

STEWART, Justice:

The plaintiffs, Harry and Barbara Bennion, brought this action against the defendant, LeGrand Johnson Construction Co., for supplying defective concrete. A jury awarded the Bennions damages in the amount of $47,444.

In 1978, the Bennions began to construct a service station in Garden City, Utah. Johnson Construction mixed and supplied concrete for the foundations. The concrete was poured by the Bennions' subcontractor, Mack Madsen. When the concrete began to harden, Mr. Bennion and his design engineer, Larry Olsen, noticed that the foundation, footings, and piers were uncharacteristically weak. In some places "J" bolts pulled clear through the concrete, and in one place a large chunk of concrete simply broke off.

Mr. Bennion contacted Johnson Construction, which conceded the concrete was weak but maintained that Madsen had caused the weakness by mixing extra water with the concrete before pouring it. Nevertheless, Johnson Construction agreed to take steps to remedy the defects. Specifically, Johnson Construction accepted a proposal by Olsen to (1) furnish free of cost more concrete, which would be mixed at a higher bag-to-water ratio to replace certain parts of the foundation and buttress others; (2) pay Mack Madsen for his additional labor in pouring the concrete; (3) pay Larry Olsen for supervising the foundation work; and (4) supply burlap bags, which would be placed on the existing concrete and wetted down to hydrate the concrete. Both Olsen and Johnson Construction told Bennion that the replacement of parts on the foundation and the buttressing of other parts of the foundation would solve the problem. After the replacement and buttressing were completed, the Bennions proceeded to erect the service station on the foundation. After they had begun using the service station, they discovered that the foundation was still deteriorating and, despite the remedial measures, was weak in places.

The Bennions refused to pay for the concrete and other materials supplied by Johnson Construction and sued Johnson Construction for breach of contract and negligence, alleging that the concrete was of an inferior quality and unsuitable for use in construction.[1] Johnson Construction counterclaimed for $5,980.27, the cost of the concrete and other materials furnished.

At trial, the Bennions called Professor Derle Thorpe of Utah State University, who testified that the composition of the concrete was substandard because of contaminants. It contained two salt compounds, sodium chloride and ammonia nitrate, and double the acceptable amount of silt. He further testified that too much water had been mixed with the concrete and that the foundation would continue to deteriorate "until it's gone."

The case was submitted to the jury on theories of accord and satisfaction, negligence, and breach of warranty. The jury found by a special verdict that the parties had not resolved their dispute by an accord and satisfaction; that Johnson Construction was guilty of negligence and breach of an express or implied warranty and that it had proximately caused plaintiff's damage; and that the Bennions were negligent but that their negligence was not a proximate cause of the damage. The jury also found that the defendants were 80% negligent and the Bennions were 20% negligent. Damages were fixed at $47,444, the amount necessary to disassemble the service station, replace the footings and piers, and rebuild the service station. The trial court offset those damages by the amount of the counterclaim, which the Bennions stipulated Johnson Construction was entitled to.

On appeal, Johnson Construction argues that there was error in the trial proceedings because (1) the jury erred in failing to find an accord and satisfaction; (2) the

---

1. No issue is raised on this appeal concerning the validity of a claim for negligence based on an alleged breach of contract. Therefore, we decline to discuss that area of the law and deal only with the issues as presented to us.

special verdict was inconsistent; (3) the $47,444 damage award was the result of passion and prejudice; and (4) the trial court should have ordered interest and attorney fees on the defendant's counterclaim. Although the defendant states in the caption to one of its arguments that the evidence is insufficient to justify the verdict, the point is not argued in the text of the brief and therefore, we decline to address that issue on this appeal.

## I.

An accord and satisfaction arises when the parties to a contract mutually agree that a different performance than that required by the original contract will be made in substitution of the performance originally agreed upon and that the substituted agreement calling for the different performance will discharge the obligation created under the original agreement. *Sugarhouse Finance Co. v. Anderson,* Utah, 610 P.2d 1369, 1372 (1980). *Accord Cannon v. Stevens School of Business, Inc.,* Utah, 560 P.2d 1383, 1386 (1977). *See also Restatement (Second) of Contracts* § 281 (1981); 1 Am.Jur.2d *Accord and Satisfaction* section 1 (1962). The obligation discharged may arise out of contract, quasi-contract, tort or some other theory of recovery. Needless to say, the original obligation, for which the new obligation is substituted, could have been the basis for a damage action but for the accord and satisfaction. 6 *Corbin on Contracts* § 1276 (1962). A party alleging accord and satisfaction has the burden of proving its elements. *Messick v. PHD Trucking Service, Inc.,* Utah, 615 P.2d 1276 (1980).

The Bennions asserted at trial that Johnson Construction promised that the remedial measures it would undertake would, in fact, remedy the defects. Harry Bennion testified that his initial reaction to the defective concrete was to tear it down and replace it, but that Olsen and Dick Sackett, an employee of Johnson Construction Company, had told him that the remedial measures would "take care of the problem" and provide a solid and adequate foundation. Bennion stated that without those assurances, he would not have permitted Johnson Construction to continue on the project.

Johnson Construction argues, on the other hand, that Harry Bennion agreed to release Johnson Construction from further liability for the defects in the concrete if Johnson Construction would complete the remedial measures proposed by Olsen. The assertion is based primarily on Sackett's testimony that "Mr. Bennion agreed that if we would go through and do what Mr. Olsen had prescribed that he would feel good and happy about our settlement."

Where evidence is in conflict in a jury trial, we assume that the jury believed those facts that support its verdict, *Ute-Cal Land Development Corp. v. Sather,* Utah, 605 P.2d 1240, 1245 (1980), and we view the facts and the reasonable inferences that arise from those facts in a light most supportive of the jury's verdict, *Cintron v. Milkovich,* Utah, 611 P.2d 730, 732 (1980); *Gossner v. Dairymen Associates,* Utah, 611 P.2d 713, 715 (1980). In refusing to find an accord and satisfaction, the jury did not transgress its prerogatives. The evidence certainly was not such as to require a conclusion of accord and satisfaction.

## II.

Johnson Construction argues that the trial court erred in not granting a new trial because the jury's answers to interrogatories were inconsistent. The case was submitted to the jury on negligence and breach of warranty theories, as well as accord and satisfaction.

In answer to special interrogatories 5(a) and 5(b), the jury found that the Bennions were negligent, but that their negligence was not a "proximate cause" of their damages. In answer to interrogatory 7(b) the jury found that Bennions' negligence was "a cause" of the Bennions' damages to the extent of being 20% at fault. Johnson Construction argues that the answer to 5(a), that plaintiffs were negligent, is inconsist-

ent with 5(b), that their negligence was not the proximate cause of the damage, and that the answer to 5(b), that plaintiff's negligence was not a proximate cause of the damage, is inconsistent to the answer to 7(b), that plaintiff's negligence was a 20% cause of the damage.

■ The answers to questions 5(b) and 7(b) are not irreconcilably inconsistent. Where the possibility of inconsistency in jury interrogatories or special verdicts exists, the courts will not presume inconsistency; rather, they will seek to reconcile the answers if possible. *Moore v. Burton Lumber & Hardware Co.*, Utah, 631 P.2d 865, 869 (1981); *Weber Basin Water Conservancy District v. Nelson*, 11 Utah 2d 253, 256, 358 P.2d 81, 83 (1960).

■ In our view, the answers to interrogatories 5(a), 5(b), and 7(b) can, and therefore must, be read harmoniously. Certainly there is no inconsistency necessary or otherwise, between findings of negligence and no proximate cause. *See Moore v. Burton Lumber & Hardware Co.*, 631 P.2d at 869; *Van Cleve v. Betts*, 16 Wash.App. 748, 559 P.2d 1006, 1012–13 (1977). Nor was the jury's answer to interrogatory 5(b), that plaintiffs were not a proximate cause of the damage, inconsistent with the answer to 7(b), that plaintiffs were "a cause" of the damage. Proximate cause is a legal construct calling for a legal conclusion based on various factors in addition to an actual cause-effect relationship. It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause. Since the jury may well have so found, we cannot conclude that there is an irreconcilable inconsistency.

■ Furthermore, Johnson Construction failed to object to the verdict before the jury was discharged. When special interrogatories or verdicts are ambiguous, counsel has an obligation either to object to the filing of the verdict or to move that the cause be resubmitted to the jury for clarification. If a party fails to take appropriate action before the discharge of the verdict, that party generally may not later move for a new trial on the ground that the verdict was defective. *See Kitchen v. Lasley Co.*, 186 Kan. 24, 348 P.2d 588, 591 (1960); *City Taxi Service, Inc. v. Gipson*, Ky.App., 289 S.W.2d 723 (1956); *Bradley v. Fessenden*, 349 Mass. 429, 208 N.E.2d 828 (1965); *Davis v. Hinman*, 288 Or. 505, 605 P.2d 700 (1980). *Cf. Shank v. Fassoulas*, Fla.Dist.Ct.App., 304 So.2d 469 (1974). The rule does not apply when a verdict is so ambiguous, contradictory or illogical that it does not clearly indicate for whom the verdict is rendered, and the verdict would leave the Court in the position of having no alternative but to guess at what the jury intended. *Anderson's Executrix v. Hockensmith*, Ky.App., 322 S.W.2d 489 (1959). *Seif v. Turowski*, 49 Wis.2d 15, 181 N.W.2d 388 (1970). The rule requiring an objection if there is some ambiguity serves the objective of avoiding the expense and additional time for a new trial by having the jury which heard the facts clarify the ambiguity while it is able to do so.

Johnson Construction does not contend that it did not have an adequate opportunity to scrutinize the verdict form before the jury was discharged. Indeed, the record shows that there was a lapse of time between the time when the verdict was rendered and when the jury was discharged.

### III.

Johnson Construction requests a new trial because the $47,444 damage award is "[e]xcessive ..., appearing to have been given under the influence of passion or prejudice." Utah R.Civ.P. 59(a)(5). The $47,444 figure, it argues, greatly exceeds the cost of repairing the foundation, which Mr. Olsen testified would be only $10,000 to $12,000. It even exceeds the cost of constructing the entire service station, which it asserts was under $30,000.

■ Obviously a jury must have some latitude in the exercise of its judgment in awarding damages. *Batty v. Mitchell*, Utah, 575 P.2d 1040, 1043 (1978); *Paul v. Kirkendall*, 1 Utah 2d 1, 3, 261 P.2d 670, 671 (1953). It has been stated

that "[j]uries are generally allowed wide discretion in the assessment of damages." *Cruz v. Montoya,* Utah, 660 P.2d 723, 726 (1983). *See also Amoss v. Broadbent,* 30 Utah 2d 165, 168, 514 P.2d 1284, 1287 (1973). A reviewing court will defer to a jury's damage award unless the award indicates that the jury disregarded competent evidence, *Batty v. Mitchell,* 575 P.2d at 1043; *Paul v. Kirkendall,* 1 Utah 2d at 3, 261 P.2d at 671; or that the award is so excessive beyond rational justification as to indicate the effect of improper factors in the determination, *Cruz v. Montoya,* Utah, 660 P.2d 723, 726 (1983); *McAfee v. Ogden Union Railway & Depot Co.,* 62 Utah 115, 129, 218 P. 98, 104 (1923); or that "it clearly appears that the award was rendered under [a] misunderstanding." *Paul v. Kirkendall,* 1 Utah 2d at 3, 261 P.2d at 671.

■■■■ To justify a new trial for excessive damages under Rule 59(a)(5), Utah R.Civ.P., the damage award must be more than generous; it must be clearly excessive on any rational view of the evidence. *See Paul v. Kirkendall,* 1 Utah 2d at 3, 261 P.2d at 671; *Whitney v. Walker,* 25 Utah 2d 202, 206, 479 P.2d 469, 471 (1971); *Stephens Ranch & Live Stock Co. v. Union Pacific Railroad Co.,* 48 Utah 528, 161 P. 459, 462–63 (1916).

■■■■ In this case, the $47,444 damage award is supported by the evidence. Johnson Construction adduced testimony that to replace the foundation would cost $42,444, including dismantling the building, demolishing the old foundation, pouring a new foundation, and rebuilding the building. The Bennions introduced testimony which placed the estimates for the same work at between $58,000 to $60,000. Given these estimates, a damage award of $47,444 is not so clearly excessive as to have no rational basis in the evidence.

The jury could have disregarded the method recommended by Johnson Construction to repair the foundation, and apparently did. That method required replacement of only certain accessible portions of the foundation and application of a

sealant to other portions on the assumption that the salt in the concrete first poured would not continue to cause significant deterioration. Professor Thorpe, on the other hand, rejected that assumption, and the jury chose to believe the evidence adduced by the plaintiff rather than the defendant. That, of course, was the jury's prerogative, which lies beyond the power of this Court to interfere with.

Johnson Construction argues that its witnesses established that the foundation was sound and did not need repair or replacement. However, Professor Thorpe controverted that evidence, stating that the salt crystals in the concrete would cause microcracking, which would severely retard the strengthening properties of the concrete; that the concrete would "continue to deteriorate until its gone in the foundation;" and that a "safety problem" existed in the foundation.

Johnson Construction also argues that the cost of replacing the foundation was higher than the original cost because the replacement specifications required a 6-bag mix, whereas only a 5-bag mix was used originally, and because the replacement specifications required additional work, such as vibrating the newly poured cement to insure a stronger concrete. Johnson Construction objected to evidence of the replacement specifications and to damage estimates based on those specifications and to damage estimates based on the ground that Johnson Construction should not have to pay for an improved foundation. The trial judge overruled both objections.

■■■■ As plaintiffs, the Bennions had the burden of proving their damages by showing the cost of repair, if repair were possible, and if not then the cost of replacing the old foundation with a foundation fit for its purpose. Although the plaintiffs' estimates based on the new specifications did not show this precisely, they did provide a reasonable basis for determining damages. Mr. Bennion introduced testimony which showed that changing from a 5-bag to a 6-bag mix would increase the

cost of the cement by about $300.00. Assuming that the jury was properly instructed on damages (which we must do, since the jury instructions are not a part of the record),[2] the jury should have discounted the cost of the more stringent specifications by the amount of added expense. We therefore find no merit in Johnson Construction's contention that the damage verdict based on more stringent specifications was excessive.

## IV.

Finally, Johnson Construction argues that the trial court erred by not awarding interest and attorney fees to it because it prevailed on a motion for summary judgment entered on its counterclaim in the amount of $5,980 for the initially delivered concrete that was subsequently found by the jury to be defective.

At the close of all the evidence and before the plaintiffs' case had been submitted to the jury, the court granted summary judgment on Johnson Construction's counterclaim but reserved the issues of whether the concrete was defective and of awarding interest and attorney fees. After the jury found in its verdict that the concrete was defective, Johnson Construction filed a "Motion to Determine Interest and Attorney Fees," on a portion of the $5,980. In its supporting memorandum, Johnson Construction sought $4,668.15 in attorney fees and 18% interest on invoices for concrete in the amount of $1,551 which had been signed. Apparently fees were not sought for materials delivered pursuant to unsigned invoices.

The trial court denied the motion for attorneys fees. In a memorandum decision the court stated:

> It was agreed by plaintiff that there were certain materials furnished to the plaintiff by the defendant that were not paid .... It is the position of the plaintiff that he had money coming from de-

fendant by reason of the delivery of poor concrete, and the negligence of the defendant, and that he was entitled to more money from the defendant than he owed and considered those bills to be paid by money owed to him from the defendant in addition to other monies over and above the receipts. Apparently the jury agreed with this and found judgment for the plaintiff in excess of the bills owed. Therefore, the court will not award attorney fees or interest on those bills that were not paid at the time of delivery or billing.

On appeal, Johnson Construction argues that this ruling was error. We disagree. Johnson Construction's counterclaim was based on invoices for goods found to be defective. It would indeed be ironic if a defaulting party were allowed to recover attorneys fees when a party refused to pay for the delivery of defective products. Although a judgment was entered on Johnson Construction's counterclaim, that was nothing more, in the context of this case, than to assure that the plaintiffs' damages would be appropriately adjusted to take into account the cost of the non-defective concrete for the new foundation. In reality, the trial court's ruling, in light of the jury's verdict that the defendant was not entitled to recover for the defective concrete, was a practical way to fix a total damage award that gave each party his due. In essence, the award of the summary judgment merged with the award of plaintiff's damages to produce a proper result.

Affirmed. Costs to respondents.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

2. In the absence of a transcript, we assume that the proceedings at trial were regular and proper and that the judgment was supported by competent and sufficient evidence. *Bevan v. J.H. Construction Co.,* Utah, 669 P.2d 442, 443 (1983). Similarly, in a civil trial, where jury instructions are not included, we will assume they are correct.