**DOWELL DIVISION OF DOW CHEMICAL U.S.A., Plaintiff and Appellee,**

v.

**DEL–RIO DRILLING PROGRAMS, INC., Defendant and Appellant.**

No. 19393.

Supreme Court of Utah.

Aug. 25, 1988.

Gerald E. Nielson, Salt Lake City, for defendant and appellant.

William J. Hansen, Salt Lake City, for plaintiff and appellee.

STEWART, Justice:

This is an appeal by the defendant Del–Rio Drilling Programs, Inc. ("Del Rio"), from a judgment denying Del–Rio recovery on a counterclaim for damages to its oil well. A jury found that both the plaintiff, Dowell Division of Dow Chemical U.S.A. ("Dowell"), and the defendant were negligent in performing fracturing operations on the defendant's oil well. The jury also found that neither party's negligence was the proximate cause of Del–Rio's loss of production from the well. We affirm.

### I. Facts

During 1980, Dowell supplied materials and services to Del–Rio for the operation of its wells. The services included fracturing operations conducted on some of Del–Rio's wells to increase oil production. Del–Rio paid for some of the materials and services but did not pay in full. Dowell brought this action to recover an unpaid balance of $38,932.68. Del–Rio admitted that this sum was due and owing but counterclaimed for damages resulting from Dowell's alleged negligence in designing and operating one of the oil well fracturing procedures.

At trial, Del–Rio attempted to introduce evidence of damage to the oil well. The

trial court refused to admit Del–Rio's evidence of expenses incurred to mitigate its damages. The evidence consisted of bills, invoices, and receipts sent to Del–Rio by the suppliers of materials and services. The court ruled that the evidence had to be presented by the persons or entities who provided the services. Dowell called the primary provider of those services as a witness. Then, on cross-examination, Del–Rio attempted to elicit information about its mitigation expenses. That information included the amount of the provider's bill, the hourly basis for its charges, and the reasonableness of the charges in the industry. The court, however, instructed the jury to disregard the testimony because that evidence was properly part of Del–Rio's principal case and could not be presented on cross-examination.

The jury was given special interrogatories which asked whether a loss of production had occurred; if so, it was required to consider whether Dowell negligently caused the loss; and, if Dowell was negligent, whether Dowell's negligence was a proximate cause of the loss. The jury was also instructed to determine whether Del–Rio negligently caused the loss and, if so, whether its negligence was a proximate cause of that loss. The jury found that a loss of production had occurred, and that both Dowell and Del–Rio were negligent, but that neither party's negligence was a proximate cause of the loss of production. The jury did not assess damages against either party.

Del–Rio filed a notice of appeal, but did not file its brief until nearly ten months later. It claimed that it had been unable to obtain a transcript of the trial proceedings from the court reporter. Dowell then filed a motion to dismiss the appeal because of Del–Rio's tardiness in filing its brief, and this Court ordered Del–Rio to file its brief within two weeks or lose its right to appeal. Del–Rio filed its brief without having the benefit of the reporter's transcript and thereafter informed the reporter that the transcript would no longer be necessary.

On appeal, Del–Rio alleges that (1) the special interrogatories submitted to the jury by the trial court were duplicative and confusing; (2) the trial court erred in refusing to allow Del–Rio to introduce evidence of its costs incurred in the fracturing operations and its expenses in mitigation of damages and in precluding the admission of evidence of its expenses during cross-examination of one of Dowell's witnesses; and (3) Del–Rio should have had the benefit of a trial transcript on this appeal, and, because it did not, it is entitled to a new trial.

## II.  Jury Interrogatories

Del–Rio's first contention is that the special interrogatories submitted to the jury were duplicative and must have confused the jury since its answers were contradictory.[1]

Del–Rio contends that the jury, having found in interrogatory No. 2 that Dowell

---

1. The jury interrogatories and the jury's answers are set forth verbatim:

1.  Was there a loss of production of oil in the Flatrock 30–2 well?
    Yes  X
    No ___
If you answer this question "Yes" consider the following question. If you answer this question "No" you do not have to proceed any further and notify the bailiff that you have arrived at your verdict.
2.  Was the plaintiff Dowell negligent in causing loss of production of the well in question?
    Yes  X
    No ___
3.  If you answered question # 2 Yes, answer this question:

Was plaintiff Dowell's negligence a proximate cause of the loss of production of the well in question?
    Yes ___
    No  X
4.  Was the defendant Del–Rio negligent in causing the loss of production of the well in question?
    Yes  X
    No ___
5.  If you answered question # 4 Yes, answer this question:
Was their negligence a proximate cause of the loss of production of the well in question?
    Yes ___
    No  X
6.  If you answered questions # 2, 3, 4 & 5 "Yes" then answer this question.
Otherwise do not answer this question.

was negligent in causing a loss of production in the well, must necessarily have also found both that Dowell was negligent and that its negligence caused the loss. According to Del–Rio, the jury necessarily contradicted its earlier conclusion that Dowell had caused the loss of production by also finding in the answer to another interrogatory that Dowell's negligence was not the proximate cause of the loss. Del–Rio argues that these answers show that the jury was confused and did not understand the meaning of "proximate cause." Del–Rio further contends that interrogatories No. 4 and No. 5, reflect the same confusion, since they are identical to interrogatories No. 2 and No. 3, except for the parties' names.

Del–Rio suggests three possible sources of the jury's alleged confusion. First, Del–Rio asserts that interrogatories No. 3 and No. 5 do nothing more than repeat interrogatories No. 2 and No. 4, respectively, and that by asking the same question twice, the interrogatories imply that "proximate cause" means something more than that the parties were "negligent in causing loss of production." Second, Del–Rio asserts that by its reference to *"the* proximate cause," *"the* efficient cause," and *"the one* that necessarily sets in operation the factors that accomplish the injury" (emphasis added), jury instruction No. 17 erroneously implies that the proximate cause of an injury must be a *single* agent or event rather than a combination of agents or events.[2] Third, Del–Rio argues that the trial court's persistent refusal to admit evidence of Del–Rio's damages led the jury to conclude that such evidence was rejected

because of an insufficient showing of proximate cause. We do not agree that either the jury instructions or the interrogatories regarding proximate cause were so unclear or misleading as to cause the jury to be confused.

■ We consider first the interrogatories. This Court reviewed a similar set of interrogatories in *Bennion v. LeGrand Johnson Constr. Co.,* 701 P.2d 1078 (Utah 1985). In that case, the jury found that: (1) the plaintiffs were negligent; (2) "[the plaintiffs'] negligence was 'a cause' of the ... loss to the extent of being 20% at fault"; and (3) the plaintiffs' negligence was not a proximate cause of its damages. *Id.* at 1082. The defendant argued that the jury's answers to interrogatories were so contradictory and inconsistent that a new trial was required. This Court held, however, that the jury's answers to the interrogatories were not irreconcilably inconsistent, stating, "[w]here the possibility of inconsistency in jury interrogatories or special verdicts exists, the courts will not presume inconsistency; rather, they will seek to reconcile the answers if possible." *Id.* at 1083. *See also Moore v. Burton Lumber & Hardware Co.,* 631 P.2d 865, 869 (Utah 1981); *Weber Basin Water Conservancy Dist. v. Nelson,* 11 Utah 2d 253, 256, 358 P.2d 81, 83 (1960); *Pace v. Parrish,* 122 Utah 141, 146, 247 P.2d 273, 275 (1952). Addressing the asserted inconsistency between a finding of negligence and a finding of no proximate cause, we explained: "Certainly, there is no inconsistency necessary or otherwise, between findings of negligence and no proximate cause." *Bennion,*

---

Considering all of the negligence which caused the loss of production of oil in the well in question at 100%, which percentage of that negligence is attributable:

A. To Plaintiff Dowell _____%
B. To Defendant Del–Rio _____%
      Total _____%

7. If you answered questions #2 & 3 "Yes", then answer this question.
Otherwise do not answer this question.
What sum would fairly compensate defendant, Del–Rio, for the loss of production of the Flatrock 30–2 well?

$____

2. Jury instruction No. 17 stated:
    The proximate cause of an injury is that cause which, in natural and continuous sequence, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury.

701 P.2d at 1083. *See also Moore v. Burton Lumber*, 631 P.2d at 869; *Van Cleve v. Betts*, 16 Wash.App. 748, 756–57, 559 P.2d 1006, 1013 (1977). The Court further explained:

> Nor was the jury's answer to [the] interrogatory ... that plaintiffs were not a proximate cause of the damage, inconsistent with the answer ... that plaintiffs were "a cause" of the damage. Proximate cause is a legal construct calling for a legal conclusion based on various factors in addition to an actual cause-effect relationship. It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause. Since the jury may well have so found, we cannot conclude that there is an irreconcilable inconsistency.

*Bennion*, 701 P.2d at 1083.

The answers to the interrogatories in this case can reasonably, and therefore must, be read harmoniously. The jury's answers to the interrogatories in question in this case, namely Nos. 2, 3, 4 and 5, can be reconciled entirely in light of *Bennion*. The jury's finding that Dowell's negligence was a cause of the loss in interrogatory No. 2 does not conflict with the jury's answer to interrogatory No. 3, finding that Dowell's negligence was not "a proximate cause" of the loss of production since the jury might have found that Dowell's negligence was an actual cause but not a proximate cause of the loss of the well. Interrogatories No. 4 and No. 5, and their answers, are identical to No. 2 and No. 3, except that Dowell's name is replaced by Del–Rio's, and those answers, likewise, are not in conflict.

■ Del–Rio's second contention is that jury instruction No. 17 (set forth in footnote 2) caused the jury to believe erroneously that there can be only one proximate cause. Del–Rio asserts that this instruction confused the jury and caused it to respond negatively to interrogatories No. 3 and No. 5, regarding proximate cause, and that once the jury concluded that both parties were negligent in causing the loss of production, instruction No. 17 caused the jury to conclude that neither party's negligence was the proximate cause of the loss. The premise of these arguments is incorrect. Instruction No. 18 explains that more than one proximate cause may exist:

> The law does not necessarily recognize *only one proximate cause* for an injury, consisting of only one factor, one act, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such case, each participating acts [sic] or omissions [sic] is regarded in the law as a proximate cause.

(Emphasis added.) Moreover, special interrogatory No. 6 (see footnote 1), dealing with the comparative negligence of the parties, instructed the jury that it was to answer No. 6 only if it had first answered both No. 3 and No. 5 affirmatively, thereby indicating that the negligence of both parties could have proximately caused the loss, implying that there could be more than one proximate cause.

Finally, we find no merit in Del–Rio's assertion that the trial court's refusal to admit evidence of damages led the jury to believe that Dowell was not liable for those damages or that damages were not actually incurred. A jury instruction clearly explained that the jury was not to be concerned with the reasons for, nor draw any inferences from, the trial judge's rulings on the admissibility of evidence.

### III. Damages

■ The next issue raised by Del–Rio is whether the trial court erred in refusing to allow Del–Rio to prove the costs incurred in the fracturing procedure and in mitigating damages. Because the jury specifically found that neither party's negligence proximately caused the loss of production and, as a result, that no damages should be awarded, we do not need to decide this issue. Any error made by the trial court in excluding that evidence is rendered harmless by the jury's finding of Dowell's non-liability. *Murphy v. Frinkman*, 92 N.M.

428, 589 P.2d 212 (Ct.App.1978); *American Oil Co. v. Columbia Oil Co.*, 88 Wash.2d 835, 567 P.2d 637 (1977); *Okkerse v. Westgate Mobile Homes, Inc.*, 18 Wash.App. 45, 566 P.2d 944 (1977).

## IV. Unavailability of Transcript

█ Finally, Del–Rio contends that the unavailability of a transcript from which to prepare an appeal is inherently unfair and constitutes grounds for a new trial. We disagree. Under former Rule 75(b), Utah Rules of Civil Procedure (1977), in existence at the time the appeal was filed, the appellant was responsible for filing a copy of the court reporter's transcript, if the appellant chose to designate the transcript as part of the record on appeal.[3] Accordingly, it was Del–Rio's duty to furnish a transcript on this appeal, if it desired a transcript. Del–Rio failed to take the necessary steps to do so and cannot now claim that it has been prejudiced by its own failure.

█ Del–Rio asserts that this issue is controlled by the rule that the death or disability of a court reporter before transcription or completion of the record is grounds for a new trial or reversal. *See generally* Annotation, *Court Reporter's Death or Disability Prior to Transcribing Notes as Grounds for Reversal or New Trial*, 57 A.L.R.4th 1049 (1987). We disagree. First, the reporter in the instant case has not been shown to be dead, disabled, or incapacitated. Furthermore, even in cases involving the death or disability of a court reporter prior to completion of the record, a new trial need not be granted if an alternative method of securing the record is available. *Id.* at 1059–60. *See, e.g., Watsabaugh & Co. v. Seaboard Surety Co.*, 106 F.2d 355 (9th Cir.1939) (possibility that other reporters could transcribe the deceased reporter's notes); *Conlin v. Coyne*, 19 Cal.App.2d 78, 64 P.2d 1123 (1937) (defendants should have attempted to prepare a record by bill of exceptions); *Pierpoint v. Akin*, 76 Colo. 478, 232 P. 682 (1925) (defendants did not demonstrate that the reporter was too ill to read his notes to a dictagraph or another stenographer, nor did defendants attempt to summarize the evidence or attempt to get the adversary to agree on a bill of exceptions without the aid of a reporter's notes); *see also Moore v. State*, 59 Okla.Crim. 372, 61 P.2d 1134 (1934).

Del–Rio contends that it did everything possible to secure a transcript by repeated requests to the court reporter. We do not agree.

---

**3.** Rule 75, Utah Rules of Civil Procedure (1977) stated:

> (b) Transcript. If the trial or hearing was stenographically reported and appellant designates for inclusion any evidence or proceedings at such trial or hearing, the appellant shall file with his designation a copy of the reporter's transcript of the evidence or proceedings included in his designation. If the designation does not include all of the evidence, the appellant shall file a copy of such parts thereof as the respondent may need to enable him to designate the parts he desires to have added, and if the appellant fails to do so the court on motion may require him to furnish the additional parts needed. The copy so filed by the appellant shall be available for the use of the other parties. In the event that a copy of the reporter's transcript or of the necessary portions thereof is already on file, the appellant shall not be required to file an additional copy.

Under former Rule 75(b), the appellant had the duty to designate the transcript as part of the record on appeal, to secure the transcript from the court reporter, to file extensions of time with the clerk of the Supreme Court in the event that the transcript was not timely completed, and to ascertain that the transcript was, in fact, filed. By contrast, the current rule, Rule 12 of the Rules of the Utah Supreme Court, requires that once the appellant has filed its notice of appeal and designated the transcript as part of the record on appeal, the appellant is no longer responsible for securing the transcript from the court reporter or requesting extensions of time for the court reporter to finish the transcript. Rather, the court reporter is now directly responsible to the Court. In the event that the reporter does not finish the transcript in a timely manner, it is the reporter's responsibility to seek extensions of time from the clerk of the Supreme Court. The Supreme Court is specifically empowered to take the steps necessary to ensure the reporter's timely completion, including, but not limited to, an order relieving the reporter of regular duties until the transcript is completed.

Del–Rio could have sought a court order compelling the reporter to prepare a transcript. A court reporter is obligated to provide a transcript of the evidence or proceedings to a party in a civil case upon request and payment of the proper fees and must do so with reasonable diligence. Utah R.Civ.P. 80(b). Failure of the court reporter to fulfill this obligation entitles a party to obtain a court order requiring compliance. *See Rappaport v. Superior Court*, 39 Cal.App.2d 15, 102 P.2d 526 (1940); *Babchak v. Sabers*, 54 Misc.2d 150, 282 N.Y.S.2d 615 (N.Y.Sup.Ct.1967); *Application of Kenda*, 2 Misc.2d 797, 154 N.Y.S.2d 248 (N.Y.Sup.Ct.1955); *see generally* 82 C.J.S. *Stenographers* § 9 (1953). Del-Rio made no attempt to obtain a court order requiring the reporter to produce the transcript.

As an alternative, Del–Rio could have prepared a statement of the trial proceedings in place of the stenographic record for use on appeal. Former Rule 75(m) of the Utah Rules of Civil Procedure stated: "In the event no stenographic report of the evidence or proceedings at a hearing or trial was made, or is available, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use instead of a stenographic transcript." Del-Rio failed to avail itself of the reconstruction procedure provided in Rule 75(m). It could have prepared a statement of the proceedings from such sources as trial notes and memory. Perhaps such a procedure in some cases would be inadequate, but we see no reason why that would be the case here.

*Emig v. Hayward*, 703 P.2d 1043 (Utah 1985) held that the defendant was required to follow the procedure set forth in Rule 75(m) to prepare a statement of the earlier proceeding to be used in lieu of a transcript to avoid a dismissal of the appeal where the court reporter had lost his notes. The Court rejected appellant's contention that the procedure for establishing the record pursuant to Rule 75(m) was inadequate and that the loss of the reporter's notes effectively denied him his right to appeal.

On these facts, we do not believe that Del–Rio has been denied its right to an effective appeal.

AFFIRMED.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.