Colleen Stock RASMUSSEN,
Plaintiff and Appellant,

v.

John Alan SHARAPATA, Defendant
and Appellee.

No. 930642–CA.

Court of Appeals of Utah.

May 4, 1995.

Kevin J. Sutterfield and Phillip E. Lowry, Provo, for appellant.

Jeffery C. Peatross and David N. Mortensen, Provo, for appellee.

Before BILLINGS, JACKSON and WILKINS, JJ.

JACKSON, Judge:

Colleen Stock Rasmussen appeals from a jury verdict rejecting her personal injury claim against John Alan Sharapata. She also appeals the trial court's denial of her motions for judgment notwithstanding the verdict and for a new trial under Utah Rules of Civil Procedure 50 and 59 respectively. We affirm.

## BACKGROUND

After dark on March 7, 1990, Rasmussen was riding her bicycle eastbound down a sloping street, when she saw a car driven by Sharapata move westbound into the left-turn lane in front of her. Rasmussen's bicycle was equipped with reflectors but did not have a headlamp as required by law. Sharapata turned left, proceeding toward a parking lot entrance on the south side of the street. As he entered the parking lot, Rasmussen struck his car. Rasmussen was injured in the accident and brought a negligence action against Sharapata, claiming he should have seen and avoided her.

At trial, the jury found that—although Sharapata was negligent—he was not the proximate cause of Rasmussen's injuries. On appeal, Rasmussen argues a variety of trial court errors prejudicially tainted the proceedings and wrongly resulted in a verdict against her.

## ISSUES

We consider two issues raised by Rasmussen: (1) Should the trial court have granted Rasmussen's motion for a mistrial, based on a juror's delayed response to a voir dire question; and, (2) is the jury's "inconsistent" special verdict grounds for reversal? [1]

## ANALYSIS

### I. Delayed Voir Dire Response

Rasmussen argues the trial court should have granted her motion for a mistrial based on Juror Branscomb's delayed response to a voir dire question. At the beginning of the trial, Rasmussen submitted a list of questions to probe prospective jurors' attitudes about tort reform. In its voir dire of the jury panel, the court asked Rasmussen's questions, including Question 14: "What have you read in magazines or newspaper articles or other literature about tort reform or about a

---

1. Rasmussen's other three contentions are without merit. First, she argues Sharapata's counsel improperly referred to inadmissible evidence during closing arguments. However, at oral argument here, Rasmussen conceded she did not preserve this issue for appeal by objecting at the time the references were made.

Second, Rasmussen asserts she was improperly limited in examining her expert witness and in objecting to Sharapata's examination of his expert witness. Rasmussen failed to brief this issue in compliance with Utah Rule of Appellate Procedure 24(a)(9), requiring her to make a proper legal argument. In her brief, she does not analyze individual rulings of the trial court regarding expert testimony, but instead attaches a substantial portion of the transcript and invites us to ferret out the errors and make her arguments for her. This we will not do. *See State v. Yates*, 834 P.2d 599, 602 (Utah App.1992).

Finally, Rasmussen contends the cumulative effect of the "errors" of which she complains denied her a fair trial. However, because we hold Rasmussen has established no errors here, the cumulative error doctrine does not apply. *See Bundy v. Deland*, 763 P.2d 803, 806 (Utah 1988).

lawsuit crisis?" Juror Branscomb did not indicate he had read tort reform literature and was eventually included as a jury member.

After impanelment, but before evidence was presented, the jurors were excused for lunch. During the lunch break, Branscomb remembered he had read a negative article in the *Reader's Digest* about the rising number of lawsuits and he notified the trial judge. Branscomb was invited, along with counsel for both Rasmussen and Sharapata, into the judge's chambers where the judge questioned Branscomb about the article and Branscomb's ability to be impartial. The judge also allowed counsel to question Branscomb. The transcript of the questioning reads:

> The court: Previously I've indicated to the attorneys that you had called the clerk's office during the lunch break to advise them of your having recalled reading an article. Why don't you go ahead and recount for us what it is you've read and what your recollection is of what you read.

> The juror: I just remember an article, I think, in the *Reader's Digest* in the last eighteen months, roughly. It seems like it was on ... the number of lawsuits. And it was a major—there was a major increase of lawsuits in the last few years. It was, of course, on the negative side of the number. That's about the gist of what I remember. As soon as I thought of that I called back on my car phone and I said I didn't think of that. And you asked something almost to that statement, anything of an article we might have seen. And I thought I better be calling you and letting you know. That's about all I remember.

> The court: As a result of what you've read do you feel that it would have an influence upon your determinations in this case?

> The juror: Oh, I don't think so. I don't remember enough of it to really give you any exacts about it. Obviously, it makes you stop and think a little bit, because that's what the article was about. But I don't think so.

> The court: Do you feel that despite the fact that this article was couched in the negative, as you've indicated, adverse to lawsuits, that that means therefore that all lawsuits are barred?

> The juror: No.

> The court: And you in fact—I recall your indicating there was a collection matter, but you've used the court system yourself as a plaintiff?

> The juror: Un-huh (indicating affirmative).

> The court: Do you feel like you could disregard the article that you've read and try this case based solely upon the facts and evidence presented?

> The juror: I feel I could.

> The court: And that if the plaintiff is entitled to a verdict, that you could award her a fair verdict?

> The juror: Yes.

> The court: Any other questions you would like me to ask?

> Mr. Peatross [Sharapata's counsel]: Only that if the juror feels the reverse of that is, of course, true, that he could be fair to both parties.

> The court: If the evidence doesn't warrant finding a verdict for the plaintiff, do you feel you could find for the defendant?

> The juror: Yes. My mother has had two car accidents in the last two years and she's back in North Carolina. I gave her the advice if the insurance company would not take care of her suitably for her car damage—two people were in it and her— and her medical damage, that she should seek counsel and go to court if necessary.

> . . . .

> Mr. Sutterfield [Rasmussen's counsel]: Have you read any other articles than the *Reader's Digest?*

> The juror: No.

> Mr. Sutterfield: Do you have any personal views on the subject?

> The juror: Umm, I—not that I can—I'm kind of in between. I mean I look at each situation on it's [sic] own merits.

After these exchanges, Sutterfield declared "the process has been tainted" and moved for

a mistrial based on the juror's responses. The trial court denied the motion and Branscomb served as a juror throughout the trial.

Rasmussen asserts a mistrial should have been granted because she was denied the impartial, unbiased jury to which she is entitled by Utah law. *See* Utah Const. art. I, § 10; *International Harvester Credit Corp. v. Pioneer Tractor & Implement, Inc.,* 626 P.2d 418, 421 (Utah 1981). Specifically, she contends (1) the trial court improperly conducted the post-impanelment questioning of Branscomb and (2) had Branscomb responded affirmatively to the tort reform question in the original voir dire, she would have used a peremptory challenge to strike him from the jury. "We will not overturn the trial court's decision to grant or deny a motion for a mistrial absent an abuse of discretion." *State v. Swain,* 835 P.2d 1009, 1010 (Utah App.1992); *see also Watkins & Faber v. Whiteley,* 592 P.2d 613, 616 (Utah 1979).

### A. Post-impanelment questioning

Rasmussen argues the trial court improperly conducted the post-impanelment questioning of Branscomb by (1) asking "leading questions" to "rehabilitate" Branscomb, instead of to expose bias, and (2) not allowing Rasmussen to "formulate and ask questions that could reveal bias on Mr. Branscomb's part."

The law on voir dire of jury panels is instructive in helping us assess whether post-impanelment questioning of a juror was proper. The scope of such questioning "is a matter within the sound discretion of the trial court, and its rulings with respect thereto will not be disturbed on appeal absent a demonstrated abuse of discretion." *Hornsby v. Corporation of the Presiding Bishop,* 758 P.2d 929, 932 (Utah App.), *cert. denied,* 773 P.2d 45 (Utah 1988); *see also Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981) ("Due consideration should be given to the trial judge's somewhat advantaged position in determining which persons would be fair and impartial jurors...."); *State v. Brooks,* 868 P.2d 818, 822 (Utah App.) ("[O]nly the trial court knows when it is satisfied that a prospective juror is impartial."), *cert. granted,* 883 P.2d 1359 (Utah 1994). The abuse of discretion standard requires we find error "only when the record clearly indicates that the decision [regarding the scope of questioning] was unreasonable." *State v. Saunders,* 893 P.2d 584, 587 (Utah App.1995).

Voir dire of a jury panel serves two purposes: "1) to allow counsel to uncover biases of individual jurors sufficient to support a for-cause challenge and 2) to gather information enabling counsel to intelligently use peremptory challenges." *Barrett v. Peterson,* 868 P.2d 96, 98 (Utah App.1993). However, post-impanelment questioning of jurors serves only the first purpose. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). We therefore address whether the post-impanelment questioning in this case exposed bias in Branscomb sufficient to dismiss him for cause.

Utah Rule of Civil Procedure 47(f)(6) allows for-cause challenges on the ground "[t]hat a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." Thus, the trial court was required to elicit from Branscomb responses revealing whether his state of mind would lead him "to favor one party over another," *Brooks,* 868 P.2d at 825. Further, "[o]nly strong and deep impressions or opinions ... serve as a basis for removal for cause." *State v. Young,* 853 P.2d 327, 343 (Utah 1993).

The Utah Supreme Court guides our analysis:

> In reviewing the trial court's decision to remove a juror for cause, this court should look at the whole voir dire exchange with the juror. If the juror's answers as a whole convey the impression of bias, then removal for cause is necessary. However, if the answers as a whole indicate that the juror is willing to listen and consider the evidence presented and to follow the law, the court is not required to remove the juror.

*Id.* at 343–44.

Thus, contrary to Rasmussen's disagreement with the trial court's use of "lead-

ing questions," Utah law does not restrict trial courts to a particular style of questioning. *See State v. Woolley*, 810 P.2d 440, 445 (Utah App.) ("The level of investigation necessary once voir dire reveals potential juror bias will vary from case to case and is necessarily dependent on the juror's responses to the questions asked."), *cert. denied*, 826 P.2d 651 (Utah 1991). Instead, we contemplate the whole exchange between the court and the juror. *Young*, 853 P.2d at 343. Here, questioning by the trial court and counsel elicited both narrative answers and one-word answers. However, the form of Branscomb's answers was not so important as the substance of his answers, which clearly showed his overall willingness to evaluate the evidence on its own merits.

Rasmussen's objection to the trial court's "rehabilitation" of Branscomb is also unsupported by law. Indeed, "Utah law *requires* trial courts to expend significant effort in rehabilitating a potential juror to whom even an inference of bias has attached." *State v. Baker*, 884 P.2d 1280, 1282 (Utah App.1994) (emphasis added), *cert. granted*, 892 P.2d 13 (Utah 1995); *see Jenkins*, 627 P.2d at 535–36. Here, an inference of bias attached to Branscomb after he admitted he had read tort reform literature. The trial court was thus required to rehabilitate Branscomb, "prob[ing] until the suggestion of bias [was] dispelled." *State v. Morgan*, 865 P.2d 1377, 1381 (Utah App.1993).

Based on the totality of the exchanges between the trial court, counsel, and Branscomb, *see Evans v. Doty*, 824 P.2d 460, 467 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992); *Hornsby*, 758 P.2d at 932 (citing *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988)), we cannot say the trial court abused its discretion in either the form or substance of its questioning. The questions and answers were reasonably sufficient to allay concerns regarding Branscomb's ability to be unbiased and impartial.

■ Finally, Rasmussen's complaint that the trial court did not allow her to "formulate and ask questions that could reveal bias on Mr. Branscomb's part" is without merit. The transcript shows the court invited counsel from both sides to question Branscomb.

The court said nothing to limit the form or substance of counsels' questions. After the two questions Rasmussen's counsel chose to ask, he did not say he wished to pose further questions. Thus, he did not present the trial court an opportunity to rule on this issue and we will not address it further on appeal. *See Broberg v. Hess*, 782 P.2d 198, 201 (Utah App.1989).

### B. Loss of peremptory challenge opportunity

■ Rasmussen argues she would have used a peremptory challenge to strike Branscomb from the jury if he had responded affirmatively to the question about exposure to tort reform literature during original voir dire questioning.

Utah has adopted the United States Supreme Court's test to address situations in which original voir dire questioning does not elicit necessary or proper responses from a jury panel member who later becomes part of the jury. *State v. Thomas*, 777 P.2d 445, 451 (Utah 1989) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)). The Supreme Court has outlined the test and its underlying policy:

A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.... [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.

*McDonough*, 464 U.S. at 555–56, 104 S.Ct. at 850.

We must first determine whether Branscomb "failed to answer honestly a material question on voir dire," *id.* The Utah Supreme Court has provided guidance for applying this prong:

Some courts have interpreted *McDonough* to require a finding of juror misconduct only if a prospective juror is aware that her answers are false. We think the better-reasoned approach mandates that a juror's "honesty" or "dishonesty" be determined from an objective perspective. The emphasis should be on the juror's lack of partiality rather than on her intent.

*State v. Thomas*, 830 P.2d 243, 246 (Utah 1992) (citations omitted).

In *Thomas*, the defendant was charged with rape and aggravated kidnapping. *Id.* at 245. On voir dire, the judge asked the jury panel if they or their close relatives had been victims of a violent crime or accused of offenses similar to those charged of the defendant. *Id.* Juror Wall did not respond to those questions and went on to become a juror. Later, after it was discovered she had at one time accused her spouse of sexually assaulting her child, the defendant moved for a new trial. *Id.* Wall stated she did not think to tell the court of her accusation because "she thought the judge meant 'something of killing or something like that.'" *Id.* The supreme court held the first prong of *McDonough* was met, stating "[a]lthough Wall's nondisclosure was purely inadvertent, she nonetheless failed to answer a material question accurately. Her intent or lack of intent is irrelevant." *Id.* at 246.

Here, it is undisputed that Branscomb's failure to disclose he had read tort reform literature was also purely inadvertent. He simply did not remember reading it until after the jury was impaneled. Because Branscomb did not answer the question[2] accurately and his intent is irrelevant, we conclude the first prong of *McDonough* is satisfied.

In the previous section, we effectively addressed the second prong of the *McDonough* test: Would an affirmative response to the tort reform question have provided Rasmussen a valid basis to challenge Branscomb for cause? *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850. We determined Branscomb's

answer raised only an inference of bias, which was dispelled by his answers to the questions of the trial court and counsel. Thus, Branscomb could not have been successfully challenged for cause and the second prong of *McDonough* is not met.

We therefore conclude the trial court did not abuse its discretion in denying Rasmussen's motion for a mistrial based on Branscomb's delayed response to the voir dire question on exposure to tort reform literature.

## II. "Inconsistent" Special Verdict

Rasmussen contends the trial court should have granted her motion for a new trial because the jury's special verdict was incomplete and thus "hopelessly inconsistent" and unsupported by the evidence. We will not reverse a trial court's decision to grant or deny a motion for a new trial absent an abuse of discretion. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991). Further, "[w]here the possibility of inconsistency in ... special verdicts exists, the courts will not presume inconsistency; rather, they will seek to reconcile the answers if possible." *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985).

The special verdict form in this case first required jurors to decide whether Sharapata was negligent. They marked "yes." Question two asked whether Sharapata was a proximate cause of Rasmussen's injuries. The jurors marked "no." The form then stated, "If you marked the answer to Question 2 'No' *go no further*, otherwise proceed." The jurors went no further. However, before sending the jury to deliberate, the trial court had directed a verdict as to question three which asked whether Rasmussen was negligent.[3] At that time, the court itself marked "yes" under question three. Question four went on to ask, "If your answer to Question 3 was 'yes,' was Ms. Rasmussen's negligence a proximate cause of her injuries?" The jury answered neither question

---

2. The tort reform question appears to be a "material question." *See generally Barrett v. Peterson*, 868 P.2d 96, 101 (Utah App.1993); *Evans v. Doty*, 824 P.2d 460, 462–67 (Utah App.1991).

3. The trial court found Rasmussen negligent in failing to equip her bicycle with a headlamp as required by law.

four nor questions on comparative fault and damages.

With these facts in mind, the special verdict form is easily reconcilable. The jury went no further than it was required to by the form. Once it had determined Sharapata not to be the proximate cause of the accident, the jury's work was done. "Certainly there is no inconsistency ... between findings of negligence and no proximate cause." *Bennion*, 701 P.2d at 1083. The jury did not proceed to answer question three regarding Rasmussen's negligence; the trial court had done so before the jury began deliberating. Thus, we do not find the jury's special verdict to be incomplete or inconsistent.

■ Finally, we address Rasmussen's contention that the evidence did not support the jury's verdict. "Where evidence is in conflict in a jury trial, we assume that the jury believed those facts that support its verdict, and we view the facts and the reasonable inferences that arise from those facts in a light most supportive of the jury's verdict." *Id.* at 1082 (citations omitted). We have reviewed the testimony and evidence presented at trial and conclude it did not require the determination that Sharapata was the proximate cause of Rasmussen's injuries.

Because the jury verdict was consistent and supported by the evidence, the trial court did not abuse its discretion in refusing Rasmussen's motion for a new trial.

## CONCLUSION

Juror Branscomb's delayed response to voir dire questions regarding exposure to tort reform materials did not prejudice Rasmussen's right to an impartial, unbiased jury. Further, the jury's special verdict was internally consistent and supported by the evidence. Accordingly, we affirm the trial court.

BILLINGS and WILKINS, JJ., concur.