2009 UT 61

**Scott RAAB, Plaintiff, Petitioner, and Appellant,**

v.

**UTAH RAILWAY COMPANY, Defendant, Respondent, and Appellee.**

Nos. 20080151, 20080184.

Supreme Court of Utah.

Sept. 18, 2009.

Stephen C. Thompson, Portland, OR, Trent J. Waddoups, Salt Lake City, for plaintiff.

E. Scott Savage, Stephen R. Waldron, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case comes to us on appeal from the district court's grant of summary judgment in favor of defendant Utah Railway on plaintiff Scott Raab's negligence claims brought under the Federal Employers Liability Act ("FELA") and the Federal Locomotive Inspection Act ("FLIA").[1] Raab seeks recovery for injuries suffered when he struck his head on an after-market air conditioning unit installed in one of Utah Railway's locomotives. In his complaint, Raab alleges that Utah Railway was negligent in (1) allowing its train to run with a lead locomotive that had a defective dynamic break and (2) operating a locomotive with a dangerously placed overhead air conditioning unit.

¶ 2 The district court granted summary judgment in favor of Utah Railway on both of Raab's claims, holding, as a matter of law, that (1) the alleged failure of the dynamic brake was not the proximate cause of Raab's injuries and (2) the placement of the air conditioning unit did not violate FLIA or proximately cause Raab's injuries. We must determine whether the district court correctly granted summary judgment in light of the appropriate standard for causation under FELA and the standard for a violation of FLIA. We reverse the district court's determinations because we conclude that the undisputed facts require that both issues be determined by a jury.

## BACKGROUND

¶ 3 The relevant facts are essentially undisputed for purposes of this appeal. We view these facts, in accordance with our standard for reviewing a district court's grant of summary judgment, in the light most favorable to Raab, the nonmoving party.[2]

¶ 4 On May 31, 2002, Raab was working as a conductor on a train hauling coal from Helper to Provo. When the train reached the top of Soldier Summit, the engineer stopped it to remove five or six "helper" engines that had been coupled in the middle of the line of cars to aid the train in its climb to the summit. At the time he stopped the train for the purpose of removing the "helper" engines, the engineer also suspected that the train's lead locomotive in the front consist[3] had a malfunctioning dynamic brake, which would make it unsafe for the train to descend through the canyon into Provo.[4]

¶ 5 Because of his concern regarding the dynamic brake, the engineer decided to replace the lead locomotive prior to beginning the descent. Raab and the engineer removed the lead locomotive from the front consist, replaced it with a locomotive containing a properly functioning dynamic brake, and then reassembled the front consist. Once the new front consist was in place, Raab entered the cabs of each of the trailing locomotives in the consist in order to ensure that the controls were set in a way that would allow the trailing locomotive to be controlled from the lead locomotive.

¶ 6 During the process of checking the controls, Raab entered the cab of one of the trailing locomotives, a 6000 series engine. This locomotive contained an after-market air conditioning unit that was attached to the ceiling of the locomotive cab. While the air conditioning unit did not extend over the entire cab ceiling, it effectively reduced the ceiling height to approximately 5 feet 10 inches in the area where it was attached. Raab, who is 6 feet 4 inches tall in his work boots, stooped through the 5 foot 6 inch cab door and safely entered the locomotive.

1. Even though Raab's claim based on a violation of FLIA operates through FELA, we refer to it throughout this opinion as his "FLIA claim."

2. *Salt Lake City Mission v. Salt Lake City*, 2008 UT 31, ¶ 5, 184 P.3d 599 (quoting *Bowman v. Kalm*, 2008 UT 9, ¶ 6, 179 P.3d 754).

3. A "consist" is a group of locomotives coupled together, usually at the front of a train.

4. Utah Railway disputes that the lead locomotive's dynamic brake was defective, but for purposes of its motion for partial summary judgment on the issue of the dynamic brake, Utah Railway assumes that the locomotive did have a malfunctioning dynamic brake. Our analysis proceeds under this assumption as well.

Once through the cab door, however, he straightened up before he had completely passed under the air conditioning unit, driving his head upward against the air conditioner.

¶ 7 As a result of his collision with the air conditioning unit, Raab suffered herniated disks in his neck and upper back. All of Raab's claimed damages stem from these injuries.

¶ 8 Raab sued Utah Railway to recover damages for his injuries, seeking recovery on two separate theories. First, Raab sought damages under FELA for Utah Railway's alleged negligence in allowing its train to be led by a locomotive with a defective dynamic brake. Second, Raab sought damages under FLIA, claiming that Utah Railway violated the statute by using the 6000 series locomotive when the positioning of the air conditioner made the locomotive unnecessarily dangerous.

¶ 9 Utah Railway moved for summary judgment on Raab's FELA and FLIA claims. The district court granted both motions, ruling, as a matter of law, that (1) Raab's FELA claim failed because the dynamic brake failure was not the proximate cause of Raab's injuries and (2) Raab's FLIA claim failed because Utah Railway had not violated the statute. In regard to Raab's FLIA claim, the district court also stated that "[t]he undisputed facts in this case establish that this is a case of non-attention incident to operation...." We view this statement as the district court's determination that the placement of the air conditioning unit was not the proximate cause of Raab's injuries, and we evaluate it accordingly. Raab appeals the district court's decisions. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

**5.** *Murdock v. Springville Mun. Corp.,* 1999 UT 39, ¶ 12, 982 P.2d 65.

**6.** *Gregory v. Mo. Pac. R.R. Co.,* 32 F.3d 160, 162 n. 6 (5th Cir.1994) (citing numerous cases implying that "whether a condition presents an 'unnecessary peril to life or limb' is an issue of fact for the jury (assuming, of course, that the evidence is not so one-sided that the jury could reach only one conclusion)"); *Steffensen v.*

## STANDARD OF REVIEW

¶ 10 We review a district court's decision to grant summary judgment for correctness, giving no deference to the district court. Our review is limited to determining whether the district court correctly applied the summary judgment standard in light of the undisputed material facts.[5]

¶ 11 Both the question of whether a negligent act proximately caused a defendant's injury and the question of whether a locomotive is unnecessarily dangerous in violation of FLIA are questions of fact that must be submitted to the jury unless a reasonable jury could reach only one conclusion based on the material facts.[6] In this case, because the relevant facts are not disputed by the parties, we must determine whether the district court correctly concluded, based on the undisputed facts, that a reasonable jury could not find for Raab on his FELA and FLIA claims.

## ANALYSIS

¶ 12 This case requires us to consider the proper causation standard for FELA negligence claims and what constitutes an "unnecessary danger of personal injury" under FLIA. FELA provides railroad employees a federal statutory negligence cause of action against their employers for injuries suffered during the course of their employment:

> Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, ma-

*Smith's Mgmt. Corp.,* 820 P.2d 482, 487 (Utah Ct.App.1991) ("[T]he issue of proximate cause should be taken from the jury only where: (1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation.").

chinery, track, roadbed, works, boats, wharves, or other equipment.[7]

¶ 13 Although FELA creates a statutory cause of action for railroad employees, it is based on common law negligence principles. The United States Supreme Court has interpreted FELA as a statutory command to apply the principles of the common law, except where those principles are specifically modified or rejected by Congress in FELA itself.[8] But while a FELA negligence action incorporates the same basic elements as state common law negligence actions—duty, breach, causation, and damages—FELA provides a separate federal statutory basis for the action, and the specific nature of each element is determined by reference to the federal common law of FELA negligence rather than to the common law negligence standards of the state in which the particular injury occurred.[9] Thus, FELA authorizes the federal courts to develop a common law of railroad negligence—within the parameters set by Congress.

¶ 14 FLIA, on the other hand, is a railroad safety statute that expressly defines prohibited conduct but does not create a cause of action for its violation. The Supreme Court has held that violations of FLIA are actionable as negligence per se under FELA.[10] The provision of FLIA at issue in this case is 49 U.S.C. § 20701, which provides:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.[11]

¶ 15 Liability under FELA is absolute upon (1) proof of a violation of FLIA and (2) proof that the FLIA violation was the cause of the injuries suffered.[12] Because an action based on an alleged violation of FLIA operates through FELA, the FELA causation standard applies to both Raab's FELA and FLIA claims.

¶ 16 We begin by analyzing the proper standard of causation in FELA cases and then apply this standard to Raab's FELA claim regarding the dynamic brake. We then turn to Raab's FLIA claim regarding the placement of the air conditioning unit, first assessing whether the district court properly concluded that, based on the undisputed facts evident in the record, no reasonable jury could have found that the placement of the air conditioning unit violated FLIA and next considering whether the district court correctly determined, as a matter

---

7. 45 U.S.C. § 51 (2006). Since there have been no substantive changes to the statutes governing this case since the events occurred, we cite to the current version throughout our opinion.

8. *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.").

9. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) ("[FELA] does not define negligence, leaving that question to be determined ... by the common law principles as established and applied in the federal courts.... What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formu-

lating and applying the concept governs." (internal quotation marks omitted)).

10. *See, e.g., Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411 (1943) (stating in regards to violations of the Boiler Inspection Act, a predecessor safety statute to FLIA, that "[a]ny employee engaged in interstate commerce who is injured by reason of a violation of the Act may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act").

11. 49 U.S.C. § 20701 (2006).

12. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 810 (6th Cir.1985) ("The liability imposed by the Locomotive Boiler Inspection Act is absolute upon proof of an unsafe part and proximate cause."); *see also Urie*, 337 U.S. at 188–89, 69 S.Ct. 1018.

of law, that the placement of the air conditioning unit was not the cause of Raab's injuries.

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON RAAB'S FELA CLAIM BECAUSE, ALTHOUGH *ROGERS* DOES NOT ELIMINATE THE REQUIREMENT THAT A FELA PLAINTIFF PROVE PROXIMATE CAUSE, A REASONABLE JURY COULD HAVE CONCLUDED, BASED ON THE UNDISPUTED MATERIAL FACTS EVIDENT IN THE RECORD, THAT THE FAILURE OF THE DYNAMIC BRAKE WAS A PROXIMATE CAUSE OF RAAB'S INJURY

¶ 17 Raab argues that, under the United States Supreme Court's decision in *Rogers v. Missouri Pacific Railroad Co.,* summary judgment on causation is inappropriate so long as a reasonable jury could conclude that Utah Railway's conduct played "any part, even the slightest" [13] in causing his injuries. Because Raab's injury would not have occurred absent the engineer's decision, due to his concern regarding the dynamic brake, to replace the front consist at the top of Soldier Summit, Raab contends that there is sufficient evidence of causation under this standard to defeat Utah Railway's motion for summary judgment.

¶ 18 Utah Railway characterizes Raab's argument as an assertion that Raab need only prove "but for," rather than "proximate," causation on his FELA claim.[14] Utah Railway contends that *Rogers* did not eliminate the general requirement that a FELA negligence plaintiff prove proximate causation and argues that, under the normal common law standard of proximate cause, summary judgment is justified because Raab's injuries are too remote from the alleged failure of the dynamic brake.

**13.** 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

**14.** Raab disagrees with Utah Railway's characterization of his position as advocating the abolishment of proximate cause in FELA negligence cases. Instead, Raab contends that he is simply stating what the standard for causation under FELA is, rather than making any argument about

¶ 19 In order to determine whether the district court properly granted summary judgment to Utah Railway on Raab's dynamic brake claim, we must first assess the impact of *Rogers* on the standard for proximate cause under FELA. Specifically, we must determine whether *Rogers* eliminated or modified the well-established rule that a plaintiff must prove that the defendant's negligence was the proximate cause of his injuries.

¶ 20 We conclude that *Rogers* did not speak to the issue of proximate cause. Rather, given that (1) reading *Rogers* as eliminating the common law proximate cause requirement is not mandated by either the statutory language or the Supreme Court's case law and (2) such a reading would be contrary to the Court's announced interpretive approach to FELA, we conclude that the *Rogers* language only referred to the unavailability of contributory negligence as a defense in FELA cases. We therefore first make a determination as to what the proper standard of proximate causation is under FELA and then evaluate Raab's claim under that standard. We conclude that, under the appropriate rule, a reasonable jury could have found that the failure of the dynamic brake was a proximate cause of Raab's injuries.

### A. Rogers *Did Not Eliminate the Requirement That a FELA Negligence Plaintiff Prove That a Railroad's Negligent Act Was the Proximate Cause of His Injuries*

¶ 21 As set out above, the parties dispute the extent to which *Rogers* spoke to the standard of proximate causation for FELA negligence claims.

¶ 22 In assessing the impact of *Rogers* on the requirement that a FELA negligence plaintiff prove "proximate cause," it is

proximate cause. *See, e.g., Norfolk S. Ry. Co. v. Sorrell,* 549 U.S. 158, 179–80, 127 S.Ct. 799, 166 L.Ed.2d 638 (Ginsberg, J., concurring). Nevertheless, Utah Railway's assessment of the substance of Raab's argument is correct—Raab is essentially arguing that "but for" causation alone is sufficient to establish liability under FELA.

important to be clear about the meaning of the term. Proximate cause is perhaps the consummate legal term of art. It may hold the dubious honor of having generated more confusion than any other term in the legal lexicon.[15] In its most common usage, the term "proximate cause" is equivalent to "legal cause" and is usually juxtaposed against the term "cause in fact." [16] While the "cause in fact" inquiry asks only whether a defendant's negligence, as a factual matter, played a role in bringing about the plaintiff's injury, the "legal cause" inquiry focuses on the question of whether liability should attach to a particular cause in fact.[17]

¶ 23 For a particular negligent act to be the legal cause of a plaintiff's injuries, there must be some greater level of connection between the act and the injury than mere "but for" causation. For our analysis in this case, we use the term "proximate cause" in its traditional sense, that is, interchangeably with "legal cause." [18] Thus, when we assess Rogers's impact on the requirement of "proximate cause," we are determining whether Rogers allows liability to attach in FELA negligence cases merely upon a showing of "cause in fact" or whether FELA negligence claims retain the general common law requirement that the plaintiff also prove "legal cause."

¶ 24 Rogers involved a railroad employee's negligence suit against his employer for injuries resulting from a fall the employee suffered while burning weeds on a railroad right of way. The employee in Rogers was given a hand torch and instructed to burn the weeds and vegetation growing within 2 to 3 feet of either side of a set of railroad tracks.[19]

¶ 25 While the employee was burning vegetation along the right of way, he heard the sound of an approaching train and moved away from the tracks for safety. As the employee observed the passing train, the train fanned the flames of the burning vegetation, first enveloping the employee in smoke and then bringing the fire close to his position. The employee covered his face and retreated quickly to avoid the fire. As he retreated, he fell from the top of a culvert and suffered serious injuries.[20]

¶ 26 The employee sued the railroad for negligence under FELA, arguing that the railroad was negligent in requiring him to burn vegetation close to active tracks and in failing to properly maintain the culvert.[21] The employee obtained a jury verdict in his

**15.** W. Page Keeton, et al., Prosser and Keeton on Torts § 41, at 263 (5th ed. 1984) ("There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement as to the best approach.").

**16.** See id. (equating proximate and legal cause).

**17.** See Dowell Div. of Dow Chem. v. Del–Rio Drilling Programs, 761 P.2d 1380, 1384 (Utah 1988) (" 'Proximate cause is a legal construct calling for a legal conclusion based on various factors in addition to an actual cause-effect relationship. It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause.' " (quoting Bennion v. LeGrand Johnson Constr. Co., 701 P.2d 1078, 1083 (Utah 1985))); see also Adas v. Ames Color–File, 160 Mich.App. 297, 407 N.W.2d 640, 642 (1987) ("Cause in fact, or 'but for' causation, means that if the harmful result would not have come about but for the negligent conduct, then there is a direct causal connection between the negligence and the injury.... By contrast, legal

or proximate causation involves a determination that the nexus between the wrongful acts (or omissions) and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. In this sense, proximate causation, and hence liability, hinges on principles of responsibility, not physics. Thus, proximate causation is a determination that must be made in addition to a determination of cause in fact or 'but for' causation." (internal quotations marks omitted)).

**18.** Today, some jurisdictions use "proximate cause" as an umbrella term that encompasses both "but for" and "legal cause." See, e.g., City of Chicago v. Beretta U.S.A. Corp., 213 Ill.2d 351, 290 Ill.Dec. 525, 821 N.E.2d 1099, 1127 (2004) ("The term 'proximate cause' encompasses two distinct requirements: cause in fact and legal cause.").

**19.** Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 502, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

**20.** Id.

**21.** Id. at 502–03, 77 S.Ct. 443.

favor at trial, which the Missouri Supreme Court reversed on appeal.[22]

¶ 27 The United States Supreme Court reversed the Missouri Supreme Court, reinstating the jury's verdict.[23] In so doing, the United States Supreme Court reviewed the two separate grounds upon which it believed the Missouri Supreme Court had rested its holding. First, the United States Supreme Court reasoned that the Missouri Supreme Court's opinion rested on a finding that the employee's own "conduct was the *sole* cause of his [injuries]."[24] The United States Supreme Court disagreed, stating that the facts raised "[a]t best, uncertainty" as to whether the employee's own actions were the sole proximate cause of his injuries, and that, given this uncertainty, the issue of causation was for the jury, rather than the court, to determine.[25]

¶ 28 The United States Supreme Court also addressed what it viewed as a possible alternative ground for the Missouri Supreme Court's decision—that the employee was contributorily negligent. The United States Supreme Court rejected this ground as well, stating that, under FELA, a court does not have to "find that the defendant's negligence was the sole, efficient, producing cause of [the plaintiff's] injury."[26] Instead, the United States Supreme Court stated:

Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest, in producing the injury* or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that *negligence of the employer played any part at all in the injury or death.* Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities.[27]

¶ 29 The above-quoted language from *Rogers* has spawned an extensive debate over what the Supreme Court meant by the phrase "played any part, even the slightest." Each of the federal courts of appeals to have specifically ruled on the issue has held that *Rogers* eliminates the obligation of a FELA negligence plaintiff to prove proximate cause.[28] Some state supreme courts have come to the opposite conclusion.[29]

22. *Id.* at 503–04, 77 S.Ct. 443.

23. *Id.* at 510–11, 77 S.Ct. 443.

24. *Id.* at 504, 77 S.Ct. 443 (emphasis added).

25. *Id.*

26. *Id.* at 505–06, 77 S.Ct. 443.

27. *Id.* at 506–07, 77 S.Ct. 443 (emphases added) (internal citations omitted).

28. *See, e.g., Richards v. Consol. Rail Corp.,* 330 F.3d 428, 434 (6th Cir.2003) ("Under [the *Rogers* ] standard, the role of the jury is significantly greater in FELA cases than in common law negligence actions. As this court has explained, *Rogers* requires a plaintiff alleging a FELA violation to offer more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." (internal citations and internal quotation marks omitted)); *Summers v. Mo. Pac. R.R. Sys.,* 132 F.3d 599, 606 (10th Cir.1997) ("During the first half of this century, it was customary for courts to analyze

liability under the FELA in terms of proximate causation. However, the Supreme Court definitively abandoned this approach in *Rogers* ...." (citations omitted)); *Oglesby v. S. Pac. Transp. Co.,* 6 F.3d 603, 609 (9th Cir.1993) ("We hold that this instruction properly expressed the requirement of causation under the BIA and that it was not prejudicial error for the court to refuse to instruct the jury that the BIA violation was the proximate or direct cause of the injury. This holding is consistent with the case law of several other circuits which have found [that] 'proximate cause' is not required to establish causation under the FELA."); *Nicholson v. Erie R.R. Co.,* 253 F.2d 939, 940 (2d Cir.1958) ("It is true that, to impose liability on the defendant, the negligence need not be the proximate cause of the injury. The F.E.L.A. has its own rule of causation. The injury need only be one resulting in whole or in part from the negligence." (internal quotation marks omitted)).

29. *Marazzato v. Burlington N. R.R. Co.,* 249 Mont. 487, 817 P.2d 672, 674–75 (1991) ("Under FELA, the test of whether a case should go to a

¶ 30 And, indeed, although the United States Supreme Court itself has before cited *Rogers* for the proposition that "a relaxed standard of causation applies under FELA,"[30] the Court's recent opinion in *Norfolk Southern Railway Co. v. Sorrell*[31] strongly indicates that the Court has never squarely addressed the issue of *Rogers*'s impact on proximate cause.

¶ 31 In *Sorrell,* the majority of the Court declined to address the appropriate standard of causation required by FELA,[32] but the case spawned two concurring opinions expressing divergent views regarding *Rogers.* Justice Souter took the position that *Rogers* spoke only to contributory negligence and therefore left in place the proximate cause requirement for FELA claims,[33] while Justice Ginsburg argued that *Rogers* made clear that FELA claims have a less exacting cau-

sation requirement.[34] Thus, even among the members of the Supreme Court, it appears that there is no definitive view of *Rogers*'s impact.

■ ¶ 32 It is clear from the Supreme Court's statements and the context of the case that *Rogers* at least holds that a FELA plaintiff's contributory negligence does not bar his or her case from proceeding to a jury. The question presented in this case is whether *Rogers* goes further and also holds that FELA's causation requirement is satisfied merely upon a showing of "but for" causation. We conclude that it does not. While other courts, including the Court of Appeals for the Tenth Circuit, have stated that *Rogers* "definitively abandoned" the requirement that a FELA plaintiff show proximate cause,[35] such an interpretation is not supported by FELA's plain language, not man-

jury is simply whether the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. [Plaintiff] cites *Rogers* for the proposition that FELA is liberally construed to require only a slight amount of foreseeability to get a FELA case to a jury. The *Rogers* Court went on to say '[i]t does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.' It is obvious from this statement that the *Rogers* case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent. The plaintiff has the burden of proving that defendant's negligence was the proximate cause in whole or in part of plaintiff's [injury]. Reasonable foreseeability of harm is an essential ingredient of FELA negligence." (first alteration in original) (citations omitted)); *see, e.g., Chapman v. Union Pac. R.R.,* 237 Neb. 617, 467 N.W.2d 388, 395 (1991) ("To recover under the Federal Employers' Liability Act, an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury.").

30. *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ("We have liberally construed FELA to further Congress' remedial goal. For example, we held in *Rogers v. Missouri Pacific Railroad Co.* that a relaxed standard of causation applies under FELA." (citation omitted)).

31. 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007).

32. *Id.* at 164–65, 127 S.Ct. 799.

33. *Id.* at 174, 127 S.Ct. 799 (Souter, J., concurring) ("FELA said nothing ... about the familiar proximate cause standard for claims either of a defendant-employer's negligence or a plaintiff-employee's contributory negligence, and throughout the half-century between FELA's enactment and the decision in *Rogers,* we consistently recognized and applied proximate cause as the proper standard in FELA suits.").

34. *Id.* at 179–80, 127 S.Ct. 799 (Ginsburg, J., concurring) ("With the motivation for FELA center stage in *Rogers,* we held that a FELA plaintiff can get to a jury if he can show that his employer's negligence was even the slightest cause of his injury. The 'slightest' cause sounds far less exacting than 'proximate' cause, which may account for the statements in judicial opinions that *Rogers* dispensed with proximate cause for FELA actions.... If we take up Prosser and Keeton's suggestion to substitute 'legal cause' for 'proximate cause,' we can state more clearly what *Rogers* held: Whenever a railroad's negligence is the slightest cause of the plaintiff's injury, it is a legal cause, for which the railroad is properly held responsible." (citation and internal quotation marks omitted)).

35. *Summers v. Mo. Pac. R.R. Sys.,* 132 F.3d 599, 606 (10th Cir.1997) ("During the first half of this century, it was customary for courts to analyze liability under the FELA in terms of proximate causation. However, the Supreme Court definitively abandoned this approach in *Rogers* ...." (citations omitted)); *see also* cases cited in note 28, *supra.* As we have stated before, our duty in FELA cases is to ascertain the construction of FELA given by the United States Supreme Court and rule accordingly. *See Miller v. S. Pac. Co.,* 82 Utah 46, 21 P.2d 865, 872–73 (1933) ("This

dated by the Supreme Court's statement in *Rogers*, and inconsistent with the Supreme Court's general interpretive approach to FELA.

¶ 33 While one could certainly read the Supreme Court's language in *Rogers* to speak to the standard of causation under FELA, this is not the best reading of the case. Given the facts in *Rogers*, which clearly implicate the issue of contributory negligence, the better reading is that the Court's language in *Rogers* spoke only to the impermissibility of barring a FELA plaintiff's claim based on the plaintiff's own contributory negligence.

¶ 34 In addition, viewing *Rogers* as a contributory negligence case is more consistent with FELA's statutory language. FELA expressly bars contributory negligence as a defense to employee negligence claims,[36] and, in regards to the standard for liability says only that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."[37] Thus, while there is a clear basis in the statutory text to support *Rogers*'s rule regarding contributory negligence, there is no similar statutory support for reading *Rogers* as eliminating the requirement of proximate causation.

¶ 35 And even if one viewed the Supreme Court's language in *Rogers* as setting out the standard for causation in FELA claims, the language itself does not establish that FELA eliminated the requirement of proving proximate cause. The Supreme Court did not say, in *Rogers*, that a FELA case must go to the jury any time the railroad's negligence played the *slightest part* in producing the plaintiff's injury. The exact statement made by the Supreme Court was that "the test of a jury case is simply whether the proofs *justify with reason* the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."[38] The inclusion of the phrase "justify with reason" suggests that some assessment of responsibility—beyond only a simple connecting chain of "but for" causation—is required before a FELA plaintiff is entitled to have his claim decided by a jury. And assessment of legal responsibility for a cause in fact of an injury is the *raison d'etre* of the proximate cause requirement.[39]

¶ 36 At most, the Supreme Court's language in *Rogers* can be characterized as ambiguous as to whether it addressed proximate cause or only contributory negligence. In light of this ambiguity, the appropriate reading of *Rogers* is the one most consistent with the Supreme Court's announced interpretive approach to FELA. As set forth above, the Supreme Court has stated that "[a]bsent express language to the contrary, the elements

---

case is brought under the provisions of the Federal Employers' Liability Act ... and the meaning and application of the act as interpreted by the Supreme Court of the United States is final and controlling as to that matter. It is the duty of this court to ascertain the construction which that court has given the act and rule accordingly." (citation omitted)). We are not bound by how the courts of appeals, including the Tenth Circuit, have construed the statute.

**36.** 45 U.S.C. § 53 (2006) ("[T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee....").

**37.** *Id.* § 51.

**38.** *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (emphasis added).

**39.** *See* W. Page Keeton, et al., Prosser and Keeton on Torts § 41, at 264 (5th ed. 1984) ("'Proximate cause'—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy." (citation omitted)).

of a FELA claim are determined by reference to the common law." [40] While "the common law" is anything but monolithic, there are some principles that are universal, and the requirement that a negligence plaintiff show proximate cause—in the sense of a legally sufficient connection beyond simple cause in fact—is part of the common law of torts in all jurisdictions.[41]

¶ 37 Because there is nothing in the text of FELA that expressly alters the standard common law requirement that a negligence plaintiff prove proximate cause, reading *Rogers*'s ambiguous language as eliminating the proximate cause requirement would be contrary to the Supreme Court's approach to FELA. We decline to assume, in light of the ambiguous language and another more plausible and consistent interpretation, that the Supreme Court violated its own interpretive rules in *Rogers*. Instead, we conclude that the Supreme Court, in *Rogers*, spoke only to the point that contributory negligence was unavailable as a defense in FELA negligence actions.

¶ 38 But this conclusion does not end our inquiry. Having determined that the Supreme Court, in *Rogers*, did not speak to the appropriate standard of proximate cause in FELA negligence cases, we must now determine the appropriate standard for proximate causation under FELA and apply it to Raab's case to determine whether the district court's decision to grant summary judgment was correct.

B. *The District Court Erred in Granting Summary Judgment to Utah Railway Because a Reasonable Jury Could Conclude That Raab's Injuries Were a Natural and Probable Consequence of the Alleged Failure of the Dynamic Brake*

¶ 39 Since *Rogers* did not speak to the issue of proximate cause, it left the FELA

standard for proximate causation where it found it.[42] Prior to *Rogers*, the United States Supreme Court had held that foreseeability was the touchstone of proximate cause. In *Brady v. Southern Railway Co.*, the Court, in a FELA decision, stated that " 'in order to warrant a finding that negligence ... is the proximate cause of an injury, it must appear that the injury was the *natural and probable consequence* of the negligence or wrongful act, and that it *ought to have been foreseen* in the light of the attending circumstances.' " [43]

¶ 40 In *Davis v. Wolfe*, the Supreme Court, after discussing a number of its prior FELA decisions, wrote as follows regarding the standard for causation under FELA:

The rule clearly deducible ... is that, on the one hand, an employee cannot recover ... if the failure to comply ... is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, *resulting in injury to him while in the discharge of his duty*, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.[44]

¶ 41 Under *Brady*, the rule of proximate cause under FELA is that an employee who is injured as a result of his employer's negligence can recover so long as his or her injury was the natural and probable consequence of the employer's negligence. *Davis* makes clear that in cases where the employer's negligence was not the direct cause of the employee's injury, the negligence is nonetheless a proximate cause

---

40. *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007).

41. *See, e.g., Stewart v. Federated Dep't Stores*, 234 Conn. 597, 662 A.2d 753, 758 (1995); *Stahl v. Metro. Dade County*, 438 So.2d 14, 17–20 (Fla.3d Dist.Ct.App.1983); *Kent v. Commonwealth*, 437 Mass. 312, 771 N.E.2d 770, 777 (2002); *Transp. Indem. Co. v. Page*, 406 P.2d 980, 985 (Okla. 1963).

42. *Sorrell*, 549 U.S. at 174, 127 S.Ct. 799 (Souter, J., concurring) (stating that *"Rogers* left [the law of proximate causation] where it was.").

43. 320 U.S. 476, 483, 64 S.Ct. 232, 88 L.Ed. 239 (1943) (quoting *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 475, 24 L.Ed. 256 (1877)) (emphases added).

44. 263 U.S. 239, 243, 44 S.Ct. 64, 68 L.Ed. 284 (1923) (emphasis added).

of the injury if the injury occurred while the employee was discharging the duty that devolved on him or her by reason of the employer's negligence. Therefore, reading *Brady* and *Davis* together, when an employer's negligence creates a situation to which the employee must respond, and the employee is injured while performing his or her duties in response to the situation brought about by the employer's negligence, the employee's injury is the "natural and probable consequence" of the negligence, and the negligence is therefore deemed to be the injury's proximate cause.

¶ 42 Here, the undisputed facts demonstrate that Raab was injured when, as a result of the malfunctioning dynamic brake, he was required to assist the engineer in resetting the locomotive controls after reforming the front consist. Applying the proximate cause standard from *Davis* and *Brady*, a reasonable jury could conclude that Raab's injury was the natural and probable consequence of Utah Railway's alleged negligence. The material facts show that the failure of the locomotive's dynamic brake created a condition to which Raab, in the discharge of his duties as an employee, was required to respond. While still in the course of responding to this condition, Raab sustained his injuries. Because a reasonable jury could conclude, based on these facts, that the failure of the dynamic brake was a proximate cause of Raab's injuries, it was inappropriate for the district court to grant Utah Railway summary judgment on Raab's FELA claim.

## II. SUMMARY JUDGMENT WAS ALSO INAPPROPRIATE ON RAAB'S FLIA CLAIM BECAUSE A REASONABLE JURY COULD CONCLUDE, BASED ON THE UNDISPUTED MATERIAL FACTS, THAT THE PLACEMENT OF THE AIR CONDITIONER RENDERED THE 6000 SERIES LOCOMOTIVE UNREASONABLY DANGEROUS AND WAS THE PROXIMATE CAUSE OF RAAB'S INJURIES

¶ 43 FLIA is a safety statute governing the use of locomotives in interstate com-

merce and provides that a railroad may use a locomotive on its line "only when the locomotive . . . and its parts and appurtenances . . . are in proper condition and safe to operate without unnecessary danger of personal injury." [45] Although FLIA does not create a separate cause of action for violations of its provisions, violations of FLIA are deemed negligent per se and are therefore actionable under FELA.[46]

¶ 44 Although its minute entry is not entirely clear, it appears that the district court rested its decision to grant summary judgment in favor of Utah Railway on Raab's FLIA claim on two separate grounds. First, the district court found that Utah Railway was entitled to summary judgment on the ground that the placement of the overhead air conditioning unit, whether negligent or not, did not violate FLIA as a matter of law because the air conditioning unit was functioning as intended. Second, the district court stated that the undisputed facts made clear that Raab's injuries resulted from "nonattention incident to operation," which we take to mean that the district court determined, as a matter of law, that the placement of the air conditioning unit was not the proximate cause of Raab's injuries. Because we conclude that a reasonable jury could find, based on the undisputed material facts evident in the record, that the placement of the air conditioning unit both (A) rendered the locomotive unnecessarily dangerous in violation of FLIA and (B) was a proximate cause of Raab's injuries, we reverse the district court.

### A. A Reasonable Jury Could Conclude That the Placement of the Air Conditioning Unit Violated FLIA

¶ 45 At trial, Utah Railway argued that it was entitled to summary judgment on Raab's FLIA claim because the air conditioning unit, regardless of its location, was functioning correctly. Utah Railway's argument was based on its assertion that FLIA is violated

---

**45.**  49 U.S.C. § 20701 (2006).

**46.**  *See Urie v. Thompson,* 337 U.S. 163, 188–89, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

only when a locomotive part or appurtenance is not functioning as intended. The district court's decision to grant summary judgment for Utah Railway on the ground that the placement of the air conditioning unit did not violate FLIA as a matter of law appears to have been based on Utah Railway's assertion.

¶ 46 On appeal, Utah Railway takes a different tack. It now apparently concedes that the negligent location of a functional locomotive part or appurtenance can create an "unnecessary danger of personal injury" in violation of FLIA.[47] Nevertheless, Utah Railway asks us to affirm the district court's decision on a different ground: that the placement of the air conditioning unit did not violate FLIA because it was possible for a person using reasonable care to enter the 6000 series locomotive cab without sustaining injury from the air conditioning unit. According to Utah Railway, the "unnecessary danger" provision of FLIA is violated only when "a worker exercising due care could *not* have interfaced with or used the subject locomotive part or appurtenance without an unnecessary risk of injury."

¶ 47 Utah Railway's proposed rule is based on its own synthesis of case law and is divorced from FLIA's actual language. According to the plain text of the statute, FLIA is violated whenever a railroad allows a locomotive to run on its railway when the locomotive is not both "in proper condition" and "*safe to operate without unnecessary danger of personal injury.*"[48] Utah Railway's proposed test for a FLIA violation would equate the phrase "unnecessary danger" with the phrase "danger that could not be avoided with the use of reasonable care." But this interpretation does not comport with the ordinary meaning of the term "unnecessary."

¶ 48 Webster's Dictionary defines "unnecessary" as "useless, needless."[49] This definition implies that when determining whether something is unnecessary, the focus should be on whether it is *needed,* not whether it could be *avoided.* A locomotive could be unnecessarily (i.e., needlessly) dangerous even if any danger it posed could generally be avoided with the exercise of due care.

¶ 49 For example, a locomotive may have been designed with an exposed electrical connection located in an out-of-the-way place. It may be likely that railroad workers exercising due care would avoid contact with the exposed wires. Nevertheless, the existence of the exposed wires may pose an unnecessary danger of personal injury if the wires could have been easily covered without significant added cost or if the exposed connection could have been located in a safer place. Conversely, the risk of personal injury from the exposed connection may be necessary if practical considerations, such as functionality requirements, justified leaving the connection exposed.

¶ 50 Therefore, whether a particular risk of injury is "unnecessary" does not depend on whether an ordinarily careful person could avoid it but on whether there is a competing concern that justifies the existence of the risk. This is not typically a question that can be resolved on summary judgment. It is a classic question of fact;[50] it is basic "Hand Formula" negligence analysis, where the determination of duty depends on balancing the burdens associated with taking a particular preventative measure against the probability and magnitude of injury that might occur absent the measure.[51]

**47.** See, e.g., *Delevie v. Reading Co.,* 176 F.2d 496, 496–98 (3d Cir.1949) (holding that the dangerous placement of a functioning reverse gear mechanism could support a jury verdict for a railroad employee under the Boiler Inspection Act, a predecessor statute to FLIA).

**48.** 49 U.S.C. § 20701(1) (2009) (emphasis added).

**49.** *Webster's Third New International Dictionary* 2504 (1986).

**50.** See *Gregory v. Mo. Pac. R.R. Co.,* 32 F.3d 160, 162 n. 6 (5th Cir.1994) (collecting cases holding that the issue of whether a particular condition is unnecessarily dangerous under railroad safety statutes is a question of fact for the jury).

**51.** The "Hand Formula" refers to Judge Learned Hand's algebraic formulation of this concept in *United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir.1947) ("[T]he owner's duty, as in other similar situations, to provide against resulting injuries is a function of three variables: (1) The probability [of an event occurring]; (2) the

This assessment can only be taken away from the jury if reasonable minds could reach only one conclusion based on the applicable material facts.[52] And the heavy burden of proving the inevitability of this conclusion rests with the moving party on summary judgment.[53]

¶ 51 Utah Railway has failed to carry its burden. The only facts that Utah Railway has advanced in favor of its proposition that the 6000 series locomotive was not unnecessarily dangerous are: (1) the air conditioning unit was functioning as intended; (2) Raab had previously entered the cabs of several 6000 series locomotives without bumping his head; and (3) Raab had already ducked below the 5 feet 11 inch clearance level under the air conditioning unit when he entered the locomotive through the cab door, which had a clearance of approximately 5 feet 6 inches. Utah Railway has presented no evidence regarding whether the air conditioning unit could have been feasibly located in a more safe position in the locomotive or whether practical considerations justified its location.

¶ 52 Thus, while the evidence before us on Utah Railway's motion for summary judgment may well establish that it is possible for an ordinarily careful person to enter the cab of the 6000 series locomotive safely, it simply does not speak to the determinative question of whether the location of the air conditioning unit created an unnecessary danger of personal injury. Because, based on the undisputed material facts, a reasonable jury could determine that the placement of the air conditioning unit created an unnecessary danger of personal injury, the district court erred by granting Utah Railway's motion for summary judgment on Raab's FLIA claim on the ground that the placement of the air condi-

tioner did not violate FLIA as a matter of law.

*B. A Reasonable Jury Could Conclude, Based on the Undisputed Material Facts Evident in the Record, That the Placement of the Air Conditioning Unit Was the Proximate Cause of Raab's Injuries*

¶ 53 In its minute entry granting Utah Railway summary judgment on Raab's FLIA claim, the district court stated that "[t]he undisputed facts in this case establish that this is a case of non-attention incident to operation." We read this statement to mean that the district court found that the placement of the air conditioning unit was not the cause of Raab's injuries as a matter of law. The district court also erred to the extent that it rested its ruling on this ground.

¶ 54 As set forth above, the FELA causation standard applies to Raab's FLIA claim.[54] Therefore, for us to affirm the district court's decision to grant summary judgment for Utah Railway based on a lack of causation, we must conclude that no reasonable jury could find, in view of the undisputed material facts, that the placement of the air conditioning unit was a proximate cause of Raab's injuries. And, as set forth above, the burden rests with Utah Railway, as the moving party on summary judgment, to prove that no reasonable jury could decide otherwise. Again, Utah Railway has failed to carry its burden.

¶ 55 There is no doubt that the placement of the air conditioning unit was a cause in fact of Raab's injuries. Absent the air conditioning unit being located where it was, Raab

---

gravity of the resulting injury, if [it] does; (3) the burden of adequate precautions. Possibly it serves to bring this notion into relief to state it in algebraic terms: if the probability be called P; the injury, L; and the burden, B; liability depends upon whether B is less than L multiplied by P: i.e., whether B is less than PL.").

**52.** *See White v. Deseelhorst*, 879 P.2d 1371, 1374 (Utah 1994) ("We also note that summary judgment is generally inappropriate to resolve negligence claims and should be employed only in the most clear-cut case. Ordinarily, whether a defendant has breached the required standard of

care is a question of fact for the jury. Accordingly, summary judgment is inappropriate unless the applicable standard of care is fixed by law, and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances." (citations and internal quotation marks omitted)).

**53.** *See Orvis v. Johnson*, 2008 UT 2, ¶ 10, 177 P.3d 600.

**54.** *See Green v. River Terminal Ry. Co.*, 763 F.2d 805, 810 (6th Cir.1985).

would not have struck his head and suffered his injuries. And, under the FELA causation standard set out above, the allegedly negligent placement of the air conditioning unit could be a proximate cause of Raab's injuries if Raab's injuries were a natural and probable consequence of the air conditioning unit's location.

¶ 56 We conclude that a reasonable jury could find, based on the undisputed material facts evident in the record, that the placement of the air conditioning unit was a proximate cause of Raab's injuries. A reasonable jury could determine that an increased risk of collision with the ceiling is a natural and probable consequence of reduced ceiling clearance in a confined space like a locomotive cab. Therefore, we hold that the district court also erred to the extent it justified, on the alternative ground of causation, its decision to grant summary judgment to Utah Railway on Raab's FLIA claim.

## CONCLUSION

¶ 57 Because a reasonable jury could conclude, based on the undisputed material facts, that Utah Railway's alleged negligence both caused Raab's injuries and constituted a violation of FLIA, we reverse the district court's decision to grant summary judgment on Raab's FELA and FLIA claims and remand to the district court for proceedings consistent with this opinion.

¶ 58 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.